UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SAMANTHA JEAN S.,

     Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

No. 1:18-CV-03120-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
REMAND AND GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT IN PART**

Before the Court is Plaintiff's Motion for Summary Judgment, **ECF No. 10**, and Defendant's Motion for Remand. **ECF No. 16**. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) of the Commissioner of Social Security's final decision, which denied her application for Disabled Adult Child Benefits under Title II of the Social Security Act, 42 U.S.C. § 402(d), and her application for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 1297-1310.

The Commissioner concedes error on one issue and the parties agree that the Administrative Law Judge's (ALJ's) decision is not supported by substantial evidence with respect to this issue. ECF No. 10 at 2, No. 16 at 4-8. However, the parties disagree on remedy—whether the Court should remand for further proceedings or for an award of benefits. *Id.* After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Remand, **GRANTS** Plaintiff's Motion for Summary Judgment **in part**, and **REMANDS** the case for additional proceedings consistent with this order.

## I.    Jurisdiction and Procedural History

This case has a lengthy history. On January 26, 2009, Plaintiff filed an application for Disabled Adult Child Benefits based on the earnings of her father, Jimmy S., and an application for Supplemental Security Income. *See* AR 116, 340-42, 343-49. In both applications, Plaintiff's alleged onset date of disability was January 1, 2008.[1] AR 340, 343. Plaintiff's applications were initially denied on August 10, 2009, *see* AR 190-96, 197-205, and on reconsideration on October 13, 2009. *See* AR 210-14, 215-19.

A hearing with ALJ R.J. Payne occurred on February 8, 2011. AR 22, 24. At this hearing, the ALJ heard testimony from medical expert Reuben Beezy, M.D.

---

[1] At a later hearing, Plaintiff clarified that she only seeks a closed period of disability for the period of January 1, 2008 to October 1, 2014. AR 1323, 1328.

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART** ~ 2

AR 31-38. On May 12, 2011, ALJ Payne issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for benefits. AR 113-127. The Appeals Council denied Plaintiff's request for review, *see* AR 133-35, and Plaintiff filed a complaint in this district challenging the denial of benefits. AR 140-43; *see Samantha S. v. Astrue*, 2:12-CV-03091-RHW, ECF No. 5 (E.D. Wash. 2012). Thereafter, Plaintiff advised the Commissioner that significant portions of the recording of the hearing—particularly the testimony of Dr. Beezy—were inaudible. AR 151, 184. In light of this, the parties filed a stipulated motion for remand for further proceedings. AR 151-52. The court granted the parties' stipulated motion and remanded the case for the ALJ to conduct a de novo hearing and render a new decision. AR 147-150.

On May 16, 2013, ALJ Laura Valente held a second hearing. AR 59, 61. Dr. Beezy submitted a letter and answered written interrogatories, but no medical expert testified at the second hearing. AR 59-72, 1122, 1133-35. On August 30, 2013, ALJ Valente issued a decision again concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for benefits. AR 163-175. Plaintiff requested review and on January 29, 2014, the Appeals Council remanded the case back to the ALJ because Dr. Beezy did not testify at the new hearing (nor did any other medical expert), and the ALJ also did not address Dr. Beezy's opinion regarding Plaintiff's mental impairments. AR 184-85. The

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART ~ 3**

Appeals Council remanded the case for the ALJ to conduct a de novo hearing and issue a new decision. AR 185-86.

On July 8, 2014, ALJ Valente held a third hearing. AR 73, 75. On August 29, 2014, she issued a decision again concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for benefits. AR 1-16. Because the district court had retained jurisdiction over the case, AR 148, Plaintiff moved to reopen proceedings in this district. *See Samantha S. v. Astrue*, 2:12-CV-03091-RHW, ECF No. 12 (E.D. Wash.). The Court granted Plaintiff's request to reopen the case. *Id.*, ECF No. 16.

Plaintiff moved for summary judgment, arguing that the ALJ erred by: (1) rejecting Dr. Beezy's revised opinion that she was incapable of full-time work; (2) finding that Plaintiff's fibromyalgia and Weber-Christian disease were non-medically determinable impairments at step two of the sequential evaluation process; and (3) discounting Plaintiff's credibility on the bases of her activities of daily living and drug-seeking behavior. *Id.*, ECF No. 25 at 17.

In February 2016, the Court issued a decision rejecting most of Plaintiff's contentions but agreeing with one. *Id.*, ECF No. 37. The Court concluded that the ALJ did not err in rejecting Dr. Beezy's revised opinion or in discounting Plaintiff's credibility on the bases of her daily work activities and drug-seeking behavior. *Id.* at 10-12, 17-22. The Court further concluded that the ALJ did not err

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART ~ 4**

in determining that Weber-Christian disease was not a medically determinable

impairment. *Id.* at 14-16. The Court reasoned that the medical record did not

provide any objective evidence of Weber-Christian disease and that this alleged

diagnosis rested entirely on subjective information provided by Plaintiff. *Id.* at 16.

However, the Court agreed with Plaintiff that the ALJ erred in concluding

that fibromyalgia was not one of her medically determinable impairments. *Id.* at

13-14. The Court determined that remand was appropriate for the ALJ to accept

the condition of fibromyalgia as a medically determinable impairment, credit the

opinion of Plaintiff's rheumatologist (Chad Byrd, M.D.), recalculate Plaintiff's

residual functional capacity, and present the new residual functional capacity to a

vocational expert. *Id.* at 22-23. Accordingly, the Court granted Plaintiff's motion

for summary judgment in part, remanded the case to the Commissioner for

additional proceedings, and entered judgment in favor of Plaintiff. *Id.* at 23.

In March 2016, the Appeals Council remanded the case to ALJ Glenn G.

Meyers with instructions to conduct a new hearing and issue a new decision. AR

1427-29. On October 11, 2017, the ALJ held a fourth hearing. AR 1331, 1333. On

March 9, 2018, he issued a new decision. AR 1297-1310. Per the Court's

instructions, he credited Dr. Byrd's opinion and found that fibromyalgia was one

of Plaintiff's severe impairments. AR 1303. Nevertheless, the ALJ concluded that

Plaintiff was not disabled as defined in the Act and was therefore ineligible for

benefits. AR 1310. Plaintiff did not file written exceptions nor did the Appeals Council opt to review the decision, so the ALJ's decision became administratively final once the period for review expired. AR 1298; *see* 20 CFR § 416.1455; 20 CFR § 416.1468(a). On July 6, 2018, Plaintiff timely filed the present action seeking judicial review of the Commissioner's final decision. ECF No. 1. Accordingly, Plaintiff's claims are properly before the Court pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g).

## II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social

Security Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926;

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART ~ 7**

20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g). The scope of review under these sections is limited, and the Commissioner's decision will be disturbed "only

if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 18 years old on the alleged date of onset, which the regulations define as a younger person. AR 340, 1334-35; *see* 20 C.F.R. §§ 404.1563(c), 416.963(c). She attended school through the 10th grade and can read, write, and communicate in English. AR 55-56, 375, 383, 1355. She has

past relevant work as a fast food worker, a hostess, a fast food cook, and a

waitress. AR 53-54, 377, 398, 1309.

## V. The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the

meaning of the Act at any time from January 1, 2008 through October 1, 2014 (the

requested closed period). AR 1310.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial

gainful activity during the requested closed period (citing 20 C.F.R. §§ 404.1571 *et

seq.*, 416.971 *et seq.*). AR 1303.

**At step two**, the ALJ found that during the requested closed period, Plaintiff

had the following severe impairments: fibromyalgia, asthma, and chronic pain

syndrome (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). AR 1303.

**At step three**, the ALJ found that during the requested closed period,

Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404,

Subpt. P, Appendix 1 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526,

416.920(d), 416.925, 416.926). AR 1304.

**At step four**, the ALJ found that during the requested closed period,

Plaintiff had the residual functional capacity to perform sedentary work as defined

in 20 C.F.R. §§ 404.1567(a), 416.967(a), including the abilities to occasionally

stoop, squat, crouch, crawl, kneel, climb ramps, and climb stairs. AR 1305-06. The ALJ further found that Plaintiff could engage in unskilled, repetitive, routine tasks in two-hour increments. AR 1305-06. However, the ALJ found that Plaintiff could never climb ladders, ropes, scaffolds, or be exposed to pulmonary irritants. AR 1306. In terms of her job attendance, the ALJ found that she would have been absent from work 10 times per year and off task eight percent of the time. AR 1306.

Given these limitations, the ALJ found that during the requested closed period, Plaintiff was unable to perform any past relevant work. AR 1309.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform (citing 20 C.F.R. §§ 404.1569, 416.969). AR 1309. These included a document preparer, a call-out operator, and a food and beverage order clerk. AR 1310.

## VI.    Issues for Review

Plaintiff argues that: (1) her residual functional capacity—specifically, the finding that she would miss 10 days of work per year and be off task eight percent of the time—compels disability; (2) substantial evidence does not support the ALJ's step five finding that other jobs existed in significant numbers in the national economy that she could perform; (3) the ALJ improperly evaluated her

conditions of Weber-Christian disease and panniculitis; (4) the ALJ improperly

evaluated and weighed the medical opinion evidence; and (5) the ALJ improperly

discredited her subjective pain complaint testimony. ECF No. 10 at 4-21.

## VII.  Discussion

**A.  Substantial Evidence does not Support the ALJ's Step Five Finding that Other Jobs Existed in Significant Numbers in the National Economy that Plaintiff Could Perform**

### 1.  The parties agree error occurred

Both parties agree that substantial evidence does not support the ALJ's step

five finding that other jobs existed in significant numbers in the national economy

that Plaintiff could perform. ECF No. 10 at 5-8, No. 16 at 4-8. The parties both

essentially agree to the following: At step five, the ALJ found that Plaintiff—who

was limited to sedentary, unskilled work—could perform three different jobs that

existed in significant numbers in the national economy: a document preparer, a

call-out operator, and a food and beverage order clerk. AR 1310. In making this

finding, the ALJ relied on the testimony of vocational expert Casey Kilduff. *See*

AR 1310, 1358-1373, 1554-56.

However, the ALJ's reliance on each of these three jobs was error. With

respect to the document preparer job, the ALJ stopped counsel's cross-examination

of Ms. Kilduff about aspects of this position and stated that he would "withdraw

the document preparer position" from consideration. AR 1371; *see also* AR 1368.

However, the ALJ then relied on this position in the written decision as a job Plaintiff could perform. *See* AR 1310.

With respect to the call-out operator job, Ms. Kilduff testified that this position was an umbrella term for four separate occupations, which totaled 13,500 jobs nationally. AR 1372. However, the parties agree that three of these four occupations had a Specific Vocational Preparation (SVP) rating[2] that precluded Plaintiff from actually performing them. ECF No. 10 at 7, No. 16 at 5-6.[3] After excluding these three occupations, it is unclear how many jobs were available nationally in the one remaining occupation that Plaintiff could perform. However, the parties agree that the ALJ erred in finding that it was a "significant" number. *Id.*

The same error occurred with respect to the food and beverage order clerk job. Ms. Kilduff testified that this position was an umbrella term for eleven separate occupations, which totaled 14,700[4] jobs nationally. AR 1361, 1372.

---

[2] The SVP rating measures how long it takes a typical worker to learn how to do his or her job at an average performance level. There are nine SVP levels; the higher the SVP number the more training needed to learn the job. Two of these jobs had an SVP 3 rating and the third had an SVP 5 rating, which are considered semi-skilled and skilled positions.

[3] Both parties cite to "Plaintiff's Exhibit A" for the SVP ratings of the various DOT occupations, and Plaintiff cites to this alleged document for the number of these jobs available nationally. ECF No. 10 at 7-8, No. 16 at 5-6. "Plaintiff's Exhibit A" is not attached to any of the parties' briefs, nor does it appear to be contained anywhere in the administrative record. Because the Court does not have access to this document, the Court accepts the veracity of only those facts to which both parties agree.

[4] The ALJ's decision incorrectly stated that 147,000 of these jobs existed nationally. AR 1310.

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART ~ 13**

However, the parties agree that Plaintiff could not actually perform either nine or ten[5] of these eleven occupations. ECF No. 10 at 7-8, No. 16 at 6. After excluding these, it is unclear how many jobs were available nationally in the remaining occupation(s) that Plaintiff could perform. However, the parties agree that the ALJ erred in finding that it was a "significant" number. *Id.*

### 2. Remedy

While the parties agree that substantial evidence does not support the ALJ's step five finding, they disagree on remedy—whether the Court should remand for an immediate award of benefits or for further proceedings. *Id.*

Errors in the ALJ's decision do not automatically entitle a claimant to disability benefits. *Strauss v. Comm'r of Soc. Sec.*, 635 F.3d 1135, 1138 (9th Cir. 2011). The Court can either remand the case for additional evidence and findings or remand for an award of benefits. *Smolen*, 80 F.3d at 1292. Remand for further administrative proceedings is appropriate when there are outstanding issues that must be resolved before a disability determination can be made, or when there is a need to resolve ambiguities in or otherwise enhance the record. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014); *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011); *Harman v. Apfel*, 211 F.3d

---

[5] Plaintiff states that she could not perform nine of these jobs (two light jobs, plus seven with a high SVP rating), ECF No. 10 at 7-8, while the Commissioner states that she could not perform ten of them. ECF No. 16 at 6. It is unclear which is correct, given that the Court does not have access to "Plaintiff's Exhibit A."

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART** ~ 14

1172, 1178 (9th Cir. 2000). Conversely, remand for an immediate award of benefits is appropriate where the record has been developed fully and further administrative proceedings would serve no useful purpose. *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004).

In this case, central issues with respect to the vocational evidence are unresolved and the Court finds that further proceedings are necessary for a proper determination to be made. Importantly, the record does not identify how many call-out operator and food and beverage order clerk jobs remained in the national economy after excluding the occupations with SVP ratings that Plaintiff could not actually perform.[6]

Moreover, there is no evidence that the three jobs discussed in the ALJ's step five analysis—a document preparer, a call-out operator, and a food and beverage order clerk—are the *only* jobs in the national economy that someone with Plaintiff's residual functional capacity could perform. In fact, at the hearing, Ms. Kilduff testified at length about another job—a "parimutel ticket checker," who verifies the accuracy and validity of attendees' tickets at events. AR 1371. Ms. Kilduff testified that this was a sedentary job, that someone with Plaintiff's limitations could perform it, and that 34,000 of these positions existed in the

---

[6] Plaintiff states that this information is contained in "Plaintiff's Exhibit A," but again, Plaintiff fails to provide this document.

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART ~ 15**

national economy. AR 1370. After Ms. Kilduff described this job, the ALJ then told Plaintiff's counsel that he would withdraw the document preparer position from consideration. AR 1371. It is unclear why the ALJ never ultimately considered the parimutel ticket checker position in his step five analysis.

Because the record has not been fully developed and there is a need to resolve ambiguities, take additional evidence, and re-evaluate step five of the sequential evaluation process, remand for further proceedings is appropriate. *See Treichler*, 775 F.3d at 1100-01. As such, Plaintiff's request for remand for an immediate award of benefits is denied. Upon remand, the Commissioner should obtain supplemental vocational expert evidence to clarify the effect of the assessed limitations on Plaintiff's ability to perform other work in the national economy, including the number of jobs available. Once this evidence is obtained, the Commissioner should re-evaluate step five of the sequential evaluation process.

**B.    The ALJ's Residual Functional Capacity Finding does not Unambiguously Compel Disability**

Plaintiff argues that her residual functional capacity—specifically, the finding that she would miss 10 days of work per year and be off task eight percent of the time—compels a finding of disability. ECF No. 10 at 4-5. She argues that if someone is off task eight percent of the time during his or her probationary period, he or she would likely be terminated. *Id.* She also argues that if someone missed work 10 times per year, then statistically he or she would likely miss work at least

once during his or her probationary period and would also likely be terminated for that reason. *Id.*

Nevertheless, Ms. Kilduff testified that someone who missed work 10 times per year and was off task 8 percent of the time could still gainfully perform the jobs of a document preparer, call-out operator, and food and beverage order clerk. AR 1360. Ms. Kilduff did testify that, generally, if someone missed work consistently or was not productive during the probationary period, then that person would likely be terminated. AR 1362-63. She further testified that generally "there should not be any absences" in the first 90 days of employment, although "[c]ertainly there may be some employers out there that would accommodate for that." AR 1363. However, Ms. Kilduff never opined that this would in fact happen to Plaintiff, nor did she ever change her opinion that Plaintiff could still maintain these three jobs in spite of her attendance and productivity limitations. AR 1358-1373. Plaintiff's contention that she would necessarily be terminated is speculative and not supported by Ms. Kilduff's testimony. Accordingly, the residual functional capacity finding does not unambiguously compel disability.

However, given that the Court is remanding this matter for the Commissioner to obtain supplemental vocational expert evidence and re-evaluate step five of the sequential evaluation process, the ALJ is encouraged to inquire

what impact, if any, Plaintiff's attendance and productivity limitations would have on her ability to successfully sustain employment through a probationary period.

## C.    The ALJ's Evaluation of Weber-Christian Disease and Panniculitis

Plaintiff argues the ALJ improperly evaluated her conditions of Weber-Christian disease and panniculitis. ECF No. 10 at 8-13. She raises three different arguments: (1) that Weber-Christian disease and panniculitis are actually the same condition, and the ALJ erred by differentiating the two; (2) that the ALJ erred in finding that her panniculitis was non-severe; and (3) that the ALJ erred by failing to evaluate her panniculitis under Listing 14.06. *Id.*

### 1.    Weber-Christian disease and panniculitis

Plaintiff first argues that Weber-Christian disease and panniculitis are actually the same condition, and that the ALJ erred in finding that she had panniculitis but not Weber-Christian disease. *Id.* at 9-10.

This argument fails for several reasons. First, she cites no evidence in the record that supports her claim that the ALJ should have treated Weber-Christian disease and panniculitis identically. *Id.* She cites several internet sources (which are not in the record), a biopsy report, and a chart note from Dr. Marvin Scotvold that documents a physical examination and treatment plan. *Id.* (*citing* AR 1862,

1870). The biopsy report and chart note do not support Plaintiff's contention. *See* AR 1862, 1870.

Moreover, this Court previously upheld the ALJ's conclusion that Plaintiff did not have Weber-Christian disease. *See Samantha S. v. Astrue*, 2:12-CV-03091-RHW, ECF No. 37 at 14-16 (E.D. Wash.). In doing so, the Court noted that Plaintiff also had panniculitis, but that it was found to be non-severe. *Id.* at 15 n.2. Because the Court (and the parties) treated these conditions as separate in the prior appeal, the Court declines to revisit these determinations now. *See Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988).

### 2. ALJ's finding that Plaintiff's panniculitis was non-severe

Plaintiff also argues the ALJ erred in finding that her panniculitis condition was not severe.[7] ECF No. 10 at 10-12.

At step two in the sequential evaluation, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). First, the claimant must establish that he or she has a medically determinable impairment. 20 C.F.R. § 416.921. The impairment must be established by objective medical evidence—a claimant's statements regarding his or her symptoms are insufficient. 20 C.F.R. § 416.921. A diagnosis itself does not

---

[7] Because the Court only noted in its last decision that Plaintiff's panniculitis was found to be non-severe and did not substantively analyze the issue, the law of the case doctrine does not control this issue. *See Richardson*, 841 F.2d at 996.

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART ~ 19**

equate to a finding of severity. *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). To be severe, an impairment must significantly limit a claimant's ability to perform basic work activities. 20 C.F.R. § 416.922; *Edlund*, 253 F.3d at 1159.

In finding that Plaintiff's panniculitis was not severe, the ALJ noted that this skin condition only appeared sporadically throughout the closed period at issue with transient lesions, and that these resolved with treatment. AR 1303. For example, during emergency room visits in November and December 2008, Plaintiff had "small faintly pink spots on her legs," which appeared to be "healing well." AR 751. Although she complained of pain over these areas, the examination of her legs was otherwise "quite benign." AR 751. In January 2009 she had "[m]ild discoloration" and hyperpigmentation in her legs, but no other problems. AR 529. In August 2009 she developed a rash consistent with panniculitis, *see* AR 1028, but by her appointment in November 2009 the rash had gone away, she had no abscesses, and she had "[n]o evidence of a panniculitis at [that] point." AR 1126. Examinations in September 2010, January 2011, March 2011, June 2011, and September 2011 revealed no skin lesions, no rashes, no abscess formation, and, importantly, "no active panniculitis." *See* AR 920, 1683, 1693, 1699, 1720.

Plaintiff argues that her symptoms were severe. However, many of the records she cites are grounded in her own subjective symptom reports or

conditions other than panniculitis. For example, she notes an emergency room visit where she sought narcotics due to painful leg lesions, ECF No. 10 at 10 (*citing* AR 514), but the doctor noted only "some lesion slightly elevated . . . without redness." AR 514. She notes a number of other emergency room visits, but these were due to a number of other conditions including MRSA, "bilateral knee pain," and a kidney mass. ECF No. 10 at 10-11; *see* AR 723, 846, 1142.

In sum, although Plaintiff offers a rational, alternative interpretation of the record, the Court concludes that the ALJ's interpretation of the record was also rational and, therefore, must be upheld. *See Crawford v. Berryhill*, 745 F. App'x 751, 753 (9th Cir. 2018) (rejecting objections to the ALJ's findings because they "amount[ed] to advocating for alternatives to the ALJ's rational interpretation of the record and therefore d[id] not demonstrate error").

### 3.    ALJ not evaluating panniculitis under Listing 14.06

Finally, Plaintiff argues that the ALJ erred by failing to analyze her panniculitis under Listing 14.06 (undifferentiated and mixed connective tissue disease). ECF No. 10 at 12-13. However, Plaintiff, who was represented by counsel, did not allege or argue at any point to the ALJ that her panniculitis symptoms should have met this listing.[8] *See* 1331-1373. Claimants have the burden

---

[8] The Commissioner argues that Plaintiff cannot meet the criteria for this listing because she cannot show any "clinical features and serologic (blood test) findings, such as rheumatoid factor or antinuclear antibody (consistent with an autoimmune disorder)." ECF No. 16 at 11. The Court need not reach this issue.

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART ~ 21**

of proving that an impairment meets or equals a listing. *Burch v. Barnhart*, 400

F.3d 676, 683 (9th Cir. 2005). Importantly, an ALJ is not required to discuss the

combined effects of a claimant's impairments or compare them to any listing in an

equivalency determination unless the claimant presents such an argument and

evidence in an effort to establish that a specific listing has been met. *See Burch*,

400 F.3d at 683. Because Plaintiff did not present any such argument to the ALJ,

either at the hearing or in briefing, the ALJ cannot be faulted for not analyzing this

particular listing. *See Lester L. v. Comm'r of Soc. Sec.*, 1:17-cv-03136-RHW, ECF

No. 28 at 4-5 (E.D. Wash. 2017).

**D.     The ALJ did not Err in Weighing the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating the medical opinion

evidence. ECF No. 10 at 13-19. Specifically, she argues the ALJ erred in

weighing the medical opinions from five providers: (1) treating physician T. Kent

Vye, D.O.; (2) treating physician Billy Nordyke, D.O.; (3) non-examining expert

witness Reuben Beezy, M.D.; (4) non-examining physician Howard Platter, M.D.;

and (5) treating physician Clark Kwok, M.D. *Id.*

**1.     Legal standards**

Title II's and XVI's implementing regulations distinguish among the

opinions of three types of physicians: (1) those who treat the claimant (treating

physicians); (2) those who examine but do not treat the claimant (examining

physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 416.927(c)(1)-(2). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Holohan*, 246 F.3d at 1202.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion—as is the case here[9]—an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies the "specific and legitimate" standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

---

[9] Plaintiff argues that Dr. Vye's and Dr. Nordyke's opinions were uncontradicted and therefore "clear and convincing reasons were required" to not give them controlling weight. ECF No. 10 at 15-16. This is incorrect—their opinions were contradicted by Dr. Howard Platter. AR 1308.

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART ~ 23**

## 2.     Treating physician T. Kent Vye, D.O.

Dr. Vye opined that Plaintiff "can work light duty no heavylifting over 20 lbs 30 hours per week." AR 1221. The ALJ discounted Dr. Vye's opinion to the extent he limited Plaintiff to 30 hours per week, reasoning that Dr. Vye did not explain any basis for this conclusion. This was proper. *Thomas*, 278 F.3d at 957 (ALJs may discount opinions that are conclusory, unexplained, or inadequately supported by clinical findings); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see* 20 C.F.R. § 404.1527(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

Citing *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) and *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017), Plaintiff argues that the Ninth Circuit has abrogated the long-standing principle that ALJs may discount medical opinions that are conclusory, unexplained, or inadequately supported by clinical findings. ECF No. 10 at 14-15. Neither case did so. Plaintiff mentions in passing that Dr. Vye's unexplained opinion is based on his "significant experience [with her] and supported by numerous records," *Id.* at 14 (quoting *Garrison*, 759 F.3d at 1013), but fails to explain further or cite any medical records that support this

proposition. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (party's failure to argue with specificity results in waiver of issue).

### 3.     Treating physician Billy Nordyke, D.O.

In June 2009, Dr. Nordyke submitted forms to the state agency opining on Plaintiff's limitations. AR 776-77. He opined that Plaintiff's pain limited her to working "0 hrs (unable to participate)." AR 776. However, he also checked the box indicating that Plaintiff could perform sedentary work, which was the most restrictive option available. AR 776. The form then asked, "How long will the person's condition likely limit the ability to work?" AR 777. Dr. Nordyke responded, "6 months." AR 777.

The ALJ discounted Dr. Nordyke's opinion for two reasons. AR 1308. The ALJ reasoned that it was internally inconsistent—*i.e.*, Dr. Nordyke opined Plaintiff could not work, but then checked the box limiting her to sedentary work. AR 1308. The parties dispute whether this was actually inconsistent. ECF No. 10 at 16, No. 16 at 13-14. However, the Court need not resolve this issue because the ALJ gave a second reason for discounting Dr. Nordyke's opinion: that Plaintiff's condition would only limit her ability to work for six months. AR 1308. Medical opinions that assess only temporary limitations lasting less than 12 months are of little

probative value. *See Husnija M. v. Comm'r of Soc. Sec.*, No. 2:18-cv-00147-RHW, ECF No. 15 at 20 (E.D. Wash. 2018) (noting that provider's six-month restriction from work was valid reason to discount the opinion); *Carmickle*, 533 F.3d at 1165 (explaining that doctor's "two-week excuse from work" was not indicative of "claimant's long-term functioning"); *Cf.* 42 U.S.C. § 423(d)(1)(A). Plaintiff contends that Dr. Nordyke only opined that her limitations "may" last another six months, ECF No. 10 at 16, but this is incorrect—the question was how long Plaintiff's conditions would "likely" limit her ability to work. AR 777. The ALJ properly discounted Dr. Nordyke's opinion.

### 4. Non-examining expert witness Reuben Beezy, M.D.

The ALJ called Dr. Beezy as a medical expert at the first hearing to provide a medical opinion. AR 28-37. Without seeing the updated medical records, he testified that Plaintiff could perform full-time sedentary work. AR 36. After reviewing the medical records that were unavailable at the first hearing, Dr. Beezy revised his opinion, added several diagnoses, and stated that Plaintiff was limited to less than sedentary work and could not work full time. AR 1122. The next month he revised his opinion again, added several more diagnoses, and opined that Plaintiff could actually perform sedentary work with some restrictions. AR 1133-35.

In her first appeal to this Court, Plaintiff argued that the ALJ erred in discounting Dr. Beezy's second opinion that she was incapable of working full time. *See Samantha S. v. Astrue*, 2:12-CV-03091-RHW, ECF No. 25 at 18-22 (E.D. Wash.). The Court rejected this argument and concluded that the ALJ did not err "in affording little weight to Dr. Beezy's second opinion." *Id.*, ECF No. 37 at 12. Plaintiff repeats this exact argument now, ECF No. 10 at 17-18, and the Court declines to revisit its prior determination. *See Richardson*, 841 F.2d at 996. But in any event, the ALJ again discounted Dr. Beezy's second opinion because it was cursory and did not explain the basis for these limitations. AR 1308; *see* AR 1122. This was proper. *See Thomas*, 278 F.3d at 957.

### 5.  Non-examining physician Howard Platter, M.D.

In October 2009, Dr. Platter reviewed the medical record and concurred with the state agency's initial assessment that Plaintiff was able to perform light work with a variety of restrictions. *See* AR 779-86, 828. The ALJ included some restrictions in addition to those contained in Dr. Platter's opinion, but otherwise adopted his opinion. AR 1308.

Plaintiff argues that Dr. Platter simply "rubber stamp[ed]" the state agency single decisionmaker's assessment and that this violated the rule against affording weight to these types of assessments. ECF No. 10 at 18-19. However, Dr. Platter's opinion expressly states that he "reviewed all previous and current medical

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART** ~ 27

information on record," and that with this information, he agreed with the state agency's determination. AR 828. Plaintiff's claim that Dr. Platter simply "rubber-stamp[ed]" the single decisionmaker's assessment lacks evidentiary support.

### 6. Treating physician Clark Kwok, M.D.

In January 2010, Dr. Kwok submitted forms opining on Plaintiff's limitations. AR 829-831. He opined that Plaintiff was pregnant and had "severe anxiety," but that her anxiety condition did not limit her ability to perform or look for work. AR 829. He also opined that Plaintiff could perform sedentary work. AR 830. The ALJ determined that Plaintiff's anxiety was non-severe, *see* AR 1304, but otherwise adopted the remainder of Dr. Kwok's opinion. AR 1308.

Plaintiff argues that the ALJ erred in crediting Dr. Kwok's opinion, arguing that Dr. Kwok only evaluated her for anxiety and pregnancy and did not assess her for fibromyalgia, chronic pain, or asthma. ECF No. 10 at 19. This is incorrect. Dr. Kwok's report does not state that he only evaluated her for anxiety and pregnancy, nor does it state that he did not treat her other conditions. AR 829-31. Plaintiff acknowledges Dr. Kwok was her treating physician. ECF No. 10 at 19. Plaintiff's argument that his opinion was "irrelevant" is therefore without merit. *Id.* at 19.

**E. Plaintiff's Subjective Symptom Complaints**

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART** ~ 28

Plaintiff argues the ALJ erred by discounting the credibility of her testimony regarding her subjective symptoms. ECF No. 10 at 19-21.

In her prior appeal to this Court, Plaintiff argued that the ALJ erred in discounting her credibility on the bases of (1) her daily childcare and work activities during the alleged period of disability and (2) her drug-seeking behavior. *See Samantha S. v. Astrue*, 2:12-CV-03091-RHW, ECF No. 25 at 27-32 (E.D. Wash.). The Court held that Plaintiff's daily childcare activities were not a proper reason for discounting her credibility, but that her work activities during the alleged period of disability were. *Id.*, ECF No. 37 at 18-19. The Court also held that Plaintiff's drug-seeking behavior and untruthfulness in an effort to obtain narcotics was also a proper basis for discounting her credibility. *Id.* at 19-22. Thus, the Court upheld the ALJ's credibility determination. *Id.* at 22.

Upon remand, the ALJ again concluded that Plaintiff's subjective pain complaints were not entirely credible and that they were belied by her medical improvement, her daily childcare activities, and the medical evidence.[10] AR 1306-07. In finding that Plaintiff's daily activities undermined her subjective symptoms, the ALJ relied entirely on Plaintiff's childcare activities and other daily household

---

[10] Because the ALJ relied on different bases for discounting Plaintiff's credibility, apart from the reasons this Court addressed in its prior decision, the law of the case doctrine does not apply. It is unclear why the ALJ did so.

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART ~ 29**

chores. AR 1306-07. The ALJ's reliance on these factors conflicted with this Court's prior decision and was clearly error.

However, the ALJ offered several additional reasons for discounting Plaintiff's subjective pain complaints. The ALJ reasoned that Plaintiff significantly improved by 2013. AR 1308; *see* AR 1287, 1584, 1829. This was proper. *See*, *e.g.*, *Burch*, 400 F.3d at 681; 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3). Plaintiff argues that "medical improvement" is a term of art that relates to a claimant being initially disabled but then improving so as to no longer qualify for benefits. ECF No. 10 at 20. While "medical improvement" does have a specific regulatory definition in another context, *see* 20 C.F.R. § 404.1594, it is also used colloquially in evaluating pain symptoms. *See Burch*, 400 F.3d at 681.

Finally, the ALJ discounted Plaintiff's subjective pain complaints because they were inconsistent with the medical evidence. AR 1307. Plaintiff reported to her doctor in December 2008 that she hurt, but was able to function. AR 515. Despite various pain complaints to her providers, her physical examinations were consistently normal and "quite benign." *See* AR 528-29, 554-57, 700, 729, 737, 751, 793, 847, 899, 916, 920, 1023, 1036, 1158, 1727-28. At a pain consultation in September 2010, Dr. Henry Kim noted that Plaintiff "appeared to actively reduce [her] range of motion." AR 920. He also noted that she "demonstrated ratchet-like giving way weakness with poor effort on both sides." AR 920. An ALJ may

discount a claimant's subjective symptom testimony when it is inconsistent with the medical evidence. *Carmickle*, 533 F.3d at 1161; *Tonapetyan*, 242 F.3d at 1148.

Plaintiff appears to argue that the ALJ rejected her subjective pain complaints because she did not produce objective medical evidence of the pain itself. ECF No. 10 at 21. While Plaintiff is correct that this would be error, *see Burch*, 400 F.3d at 680, this is not what the ALJ did. Rather, the ALJ discredited her testimony because the medical records affirmatively contradicted it, which is permissible. AR 1307. Plaintiff also argues that she went to the emergency room over 50 times during the relevant period. ECF No. 10 at 21. However, these visits were often for conditions unrelated to her allegedly disabling impairments and, as discussed above, her examinations during these visits were generally normal. *See* AR 1066, 1084, 1096, 1278, 1582, 1611, 1632, 1673, 1680, 1688, 1696, 1715.

For the reasons discussed above, the ALJ erred when considering Plaintiff's daily childcare activities in discounting her subjective pain complaints, but then provided two proper reasons for doing so.

## VIII.  Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Remand, **ECF No. 16,** is **GRANTED.**

**ORDER GRANTING DEFENDANT'S MOTION FOR REMAND AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART** ~ 31

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED in part.**

3.    The Commissioner's decision to deny Plaintiff's applications for Social Security benefits is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g). Because the error is limited to the vocational testimony, the Commissioner should obtain supplemental vocational expert evidence to clarify the effect of the assessed limitations on Plaintiff's ability to perform other work in the national economy, including the number of jobs available.

4.    Judgment shall be entered in favor of Plaintiff and against Defendant and the file shall be closed.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and **close the file**.

**DATED** this 27th day of September, 2019.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge